**Mark P White**
**Law Offices of White & Fudala**
**57 Bedford St., Suite 103**
**Lexington, MA 02474**
**781-863-2041**
**Attorneys for Plaintiff**
**Diversified Biotech, Inc.**
**(BBO-556,346))**

FILED IN CLERKS OFFICE 2003 JUL -1 A 10: 29 U.S. DISTRICT COURT DISTRICT OF MASS.

03 - 11239 JLT

**UNITED STATES DISTRICT COURT**

**DISTRICT OF EASTERN MASSACHUSETTS**

MAGISTRATE JUDGE Alexander

| | |
|---|---|
| **DIVERSIFIED BIOTECH, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GA INTERNATIONAL, INC.**<br><br>**Defendant** | **CIVIL ACTION NO.:**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

RECEIPT # 48598
AMOUNT $ 150 —
SUMMONS ISSUED Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. DSS
DATE 7/1/03

Plaintiff, Diversified Biotech, Inc. ("Diversified"), having its principal place of business at 1208 VFW Parkway, Boston, Massachusetts,02132 by way of Complaint against Defendant GA International, Inc. ("GA")says:

## 1. JURISDICTION AND VENUE

1.1 This is an action for infringement of patents, 35 U.S.C. §271, arising under the patent laws of the United States, for violation of the Trademark and Unfair Competition Laws of the United States (15 U.S.C. §1051-1127), and infringement of copyright (17 U.S.C. §501 et seq.), as well as Massachusetts statutory and common law causes of action for unfair

competition, and tortious interference with contract and prospective economic relationship. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. §§1331 & 1338, and 17 U.S.C. Section 501, *et seq*. This Court has subject matter jurisdiction over the Massachusetts Counts Two and Three as they are claims joined with substantial and related claims under the patent laws of the United States and, therefore, jurisdiction is conferred by 28 U.S.C. Section 1338(b) and Section 1367. Venue is proper in this jurisdiction under 28 U.S.C. §§1391(b) and (c), 28 U.S.C. §1400(b), and M.G.L. Ch 223A §3.

## 2. THE PARTIES

2.1 Plaintiff DIVERSIFIED is a Massachusetts corporation headquartered in Boston, Massachusetts at 1208 VFW Parkway. DIVERSIFIED is in the business of licensing technologies from universities and others, overseeing manufacture, documentation, marketing, advertising, and sale of the products produced under said licenses through channels including direct mailing, and networking throughout the scientific community ("Business"). DIVERSIFIED has been in business since August 23, 1984.

2.2 GA is a Canadian Corporation, Registered with the Province of Quebec, Matricule 1161197026, and headquartered at 1315 Rue Fletcher, Laval (Quebec), with offices at 965 Boul. Cure-Labelle, CP 41534, Laval QC H7V 2V0, Canada. GA further operates

an office in the United States at PO BOX 2633, Champlain, NY 12919. This judicial district has personal jurisdiction over GA within the meaning of 28 U.S.C. § 1391(c).

2.3 GA is doing business, within the meaning of 28 U.S.C. § 1391(c),by means of an interactive Internet Web site which solicits and allows on-line, telephone and fax ordering throughout the United States and elsewhere.

**3. NATURE AND BACKGROUND OF THIS ACTION**

3.1 On November 17, 1998, United States Patent No. 5,836,618 entitled "Stretchable thermoplastic labels for cryogenic storage containers" ("618 Patent") was duly and legally issued to Brandeis University ("BRANDEIS"), of Waltham, Massachusetts, on an application filed by Dr. Daniel Perlman of BRANDEIS, a copy of said '618 Patent being attached hereto as Exhibit "A".

3.2 On July 26, 1999, DIVERSIFIED submitted an application for registration in the United States Copyright Office for the work entitled "LASER PRINTER FORMATTING INSTRUCTIONS FOR CRYOGENIC LABELS", which resulted in United States Copyright Registration No. TX-4-933-813, a copy of which is attached hereto as Exhibit B.

3.3 In or around January 1997, BRANDEIS granted to DIVERSIFIED an exclusive license to the '618 Patent.

3.4 In or around March, 1997, DIVERSIFIED began selling labels ("cryogenic labels") under said license agreement.

3.5 On or about May 2002 DIVERSIFIED became aware of the fact that GA was selling products in the United States which appeared to infringe on the '618 Patent, and within a few weeks obtained samples of GA's apparently infringing product. Said product was tested by Dr. Daniel Perlman, the inventor of record in the '618 patent, who verified to a reasonable degree of certainty that GA's product did infringe on the '618 Patent.

3.6 At this time, DIVERSIFIED became aware that GA was further infringing on DIVERSIFIED's copyrights and trademarks, and was further operating in violation of state and federal unfair competition laws, and tortiously interfering with Plaintiff's contractual and prospective relationships.

3.7. On or about May 9, 2002 DIVERSIFIED's counsel served GA with a cease and desist letter, attached hereto as Exhibit C, demanding that GA immediately terminate its unlawful activities.

3.8 On April 15, 2003 DIVERSIFIED received a response to said cease and desist letter from GA, attached hereto as Exhibit D, stating that the claims were being investigated.

3.9. On information and belief GA has continued its unlawful, infringing activities as cited, notwithstanding its receipt of said cease and desist letter, and the response thereto written by GA.

## 4. **FIRST COUNT**

## **PATENT INFRINGEMENT**

4.1. DIVERSIFIED repeats and realleges all of the previous paragraphs of the Complaint as if fully set forth herein.

4.2. On information and belief, GA, has been and is now infringing, contributorily infringing and actively inducing infringement of at least claim 1 of the Patent No. '618 by making, using, offering to sell and/or selling within this judicial District and elsewhere in the United States, without license or authority from BRANDEIS or DIVERSIFIED, certain labels sold under the trade name: "CRYO-LAZER TAG", "CRYO-LABEL", "CRYO-TAG", and "LAB TAGS", and by instructing others how to use these labels. (See Exhibit G attached hereto.)

4.3. On information and belief, the infringement of the '618 Patent by GA and its agents has been willful and deliberate and said Defendant will continue in its infringing activities unless restrained by this Court.

4.4. On information and belief, the Defendant and its agents have profited handsomely through their infringement. At the same time, the Defendant's infringement has caused DIVERSIFIED irreparable harm in its own business.

4.5. On information and belief, the Defendant will continue to profit by its infringing activities, unless these infringing activities are expired.

4.6. DIVERSIFIED has complied with the requirements of 35 U.S.C. Section 287 when applicable.

4.7. DIVERSIFIED has been damaged and will be irreparably injured unless these infringing activities are enjoined.

WHEREFORE, Plaintiff prays:

A) That this Court adjudge that BRANDEIS is the owner of the '618 Patent, and that Plaintiff DIVERSIFIED is the exclusive licensee of said '618 Patent with all rights of recovery under said patent.

B) That this Court adjudge that each claim of the '618 Patent is good and valid in law and that the Defendant has infringed said Patent.

C) That a preliminary and permanent injunction be issued enjoining the Defendant and those in privity with the Defendant from further infringement, contributory

infringement and actively inducting infringement of said '618 Patent;

D) That an accounting be had for the damages to DIVERSIFIED, separately, arising the Defendant's infringing activities, together with interest and costs, and that such damages be awarded to DIVERSIFIED;

E) That the Defendant's infringement be adjudged willful and that the damages to DIVERSIFIED be increased to three times the amount found or assessed pursuant to 35 U.S.C. Section 284;

F) That this be adjudged an exceptional case and that DIVERSIFIED be awarded its attorney fees in this action pursuant to 35 U.S.C. Section 285; and

G) That DIVERSIFIED be awarded such other and further relief as the Court may deem just and equitable.

**5. SECOND COUNT**

**VIOLATION OF THE LANHAM ACT, 15 USC §1125**

5.1. Plaintiff repeats and re-alleges all of the previous paragraphs of this Complaint as if fully set forth herein.

5.2. In connection with its Business and to identify its Business, and to distinguish its Business from its competitors, Plaintiff has, since at least as early as

August 1995, utilized its trademark, "CRYO-TAG" on its goods, namely stretchable thermoplastic labels for cryogenic storage containers as well as in its advertising and promotional literature ("Plaintiff's Products").

5.3. Plaintiff's use of the words "CRYO-TAG" is non-functional in that it is used by Plaintiff solely to identify Plaintiff's Products.

5.4. CRYO-TAG was first used on Plaintiff's Products as early as August 1995; was first used on Plaintiff's Products in interstate commerce, at least, as early as August 1995; and is now in use in such commerce.

5.5. Plaintiff's use of CRYO-TAG as a trademark for Plaintiff's Products, has been open, notorious, and continuous since, at least, as early as August 1995 and Plaintiff has used said mark in interstate commerce since August 1995.

5.6. Plaintiff is the owner of the CRYO-TAG trademark when used in connection with Plaintiff's Products and is the owner of all the goodwill associated therewith.

5.7. By virtue of the long, continuous and extensive use by Plaintiff of CRYO-TAG on Plaintiff's Products, such mark has acquired a secondary meaning with respect to Plaintiff's Products indicating the source of origin of

said Plaintiff's Products to reside solely with Plaintiff.

5.8. During the period of time in which it has used CRYO-TAG as a mark for Plaintiff's Products, Plaintiff has spent substantial sums of money on advertising and promoting Plaintiff's Products. As a result of such advertising and promotion, Plaintiff's Products sold under the CRYO-TAG trademark have acquired and now possess an extensive and favorable reputation reflected in a substantial amount of goodwill. Accordingly, the trade and purchasing public have come to know and recognize Plaintiff's trademark as identifying exclusively Plaintiff's Product.

5.9. Notwithstanding Plaintiff's well known and prior common law rights to the use of CRYO-TAG as a trademark, on information and belief, the Defendant GA, on or before January 1, 2003, with actual knowledge of Plaintiff's marks and rights, adopted and used the trademark "CRYO-TAG" in connection with goods and services identical to Plaintiff's Products, and specifically identical to those offered in conjunction with the cryogenic labels covered by the '618 Patent.

5.10. Owing to the confusing similarity between Defendant's use of CRYO-TAG and Plaintiff's CRYO-TAG mark,

as applied to the same and related goods, namely Plaintiff's Product, consumers are likely to believe, and would be justified in believing, that Defendant's goods originate from Plaintiff or an entity in some way associated with and/or sponsored by Plaintiff.

5.11. The goods upon which Defendant GA is alleged to be using CRYO-TAG and Plaintiff's Products on which its CRYO-TAG mark is used, are goods which are sold, distributed and advertised through the same channels of trade to the same classes of purchasers. There is, therefore, a strong likelihood of confusion, mistake, or deception, and many persons familiar with Plaintiff's long-established mark, reputation and favorable goodwill are likely to buy Defendant's goods in the belief that the latter goods are sold or authorized by Plaintiff.

5.12. Despite Plaintiff's repeated demands that the Defendant cease and desist from its infringement, the Defendant has refused to discontinue use of the name and mark CRYO-TAG in connection with its advertising and promotion of cryogenic labels, and has continued to violate the rights of the Plaintiff, to mislead the public, and to trade unfairly upon Plaintiff's reputation and good will.

5.13. The foregoing acts of Defendant, including use of

CRYO-TAG in commerce in connection with goods identical to Plaintiff's Product, constitute the use of a false designation of origin or a false representation by inducing the erroneous belief that Defendant and its goods are in some manner affiliated or associated with or sponsored by Plaintiff in violation of 15 U.S.C. § 1125(a).

5.14. By reason of Defendant's acts, Plaintiff has been damaged in an amount thus far not determined, and has suffered and will continue to suffer irreparable harm if the relief sought herein is not granted. Plaintiff lacks an adequate remedy at law in connection with the claims asserted herein.

WHEREFORE, Plaintiff prays:

A. That Defendant, its directors, officers, agents, servants, employees, related companies, parent companies, subsidiaries, licensees, assigns, and all parties in privity with Defendant, be preliminarily and permanently enjoined from using the designation "CRYO-TAG" or any other confusingly similar designation alone or in combination with other words or with graphic symbols or logos, to market, advertise or identify the Defendant's cryogenic labels.

B. That Defendant, its directors, officers, agents,

servants, employees, related companies, parent companies, subsidiaries, licensees, assigns, and all parties in privity with Defendant, be preliminarily and permanently enjoined from intentionally interfering with the prospective relationships and contractual relationships between Plaintiff and its customers in any manner, including but not limited to, selling or offering for sale to any of Plaintiff's customers any products that are competitive to Plaintiff's products and which contain infringing or confusingly similar trademarks to that of Plaintiff.

C. That Defendant file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction demanded above, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction.

D. That Defendant be required to deliver up to be impounded during the pendency of this action, all infringing copies of the Defendant's cryogenic labels in its possession or control.

E. That Defendant be required to recall and deliver up to be impounded during the pendency of this action, all infringing copies of the Defendant's cryogenic labels

bearing the infringing designations.

F. That Defendant be preliminarily and permanently enjoined from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities enumerated in paragraphs A and B above.

G. That Defendant issue written notice to all of its customers, including those to whom it has sold or offered for sale the infringing cryogenic labels and any colorable imitations thereof, which states that said cryogenic labels are not endorsed, approved, manufactured or authorized by Plaintiff.

H. That monetary damages be awarded to Plaintiff in an amount to be fixed by the Court, including all of Defendant's profits or gains resulting from their willful infringement, or awarding Plaintiff its damages, whichever is greater, said amount to be trebled and exemplary damages to be awarded in view of Defendant's intentional acts of infringement.

I. Awarding to Plaintiff its attorneys' fees due to the exceptional nature of this case, and all of its costs and expenses of litigation.

J. For such other and further relief as this Court may deem just and proper.

## **6. THIRD COUNT**

## **COPYRIGHT INFRINGEMENT**

6.1. Plaintiff repeats and re-alleges all of the previous paragraphs of this Complaint as if fully set forth herein.

6.2. Plaintiff has created an original expression of authorship, namely distinctive, selectively arranged and proprietary promotional literature and instructions, which it supplies in connection with the sale of its exclusively licensed, patented cryogenic labels (hereinafter "Plaintiff's CRYO-TAG Copyright").

6.3. Plaintiff's Diversified Biotech Copyright is wholly original with Plaintiff and is copyrightable subject matter under the Copyright Laws of the United States, 17 U.S.C. 101 et seq.

6.4. Plaintiff has duly complied with the provisions of the Copyright Laws of the United States. It has secured the exclusive rights and has privileges in and to the Biotech Copyright, and is the registrant of a valid United States Copyright (see attached Exhibit "B").

6.5. Recently, Plaintiff discovered that Defendant had infringed Plaintiff's Diversified Biotech Copyright by manufacturing, printing, reprinting, publishing,

displaying, vending, distributing, selling, promoting, and/or advertising promotional literature in connection with identical goods, which promotional literature contains pictorials, text, and displays that are substantially similar to and were copied from Plaintiff's Diversified Biotech Copyright. All of the activities of Defendant aforesaid are in violation of the rights of Plaintiff under 17 U.S.C. § 101 et seq. A Copy of said Defendant's infringement is attached hereto as Exhibit "E". A Copy of Plaintiff's original work is attached hereto as Exhibit "F."

6.6. Shortly thereafter, Plaintiff informed Defendant in writing of Plaintiff's Diversified Biotech Copyright and that Defendant's unauthorized usage constituted copyright infringement, and demanded that Defendants Cease and Desist.

6.7. Defendant, having full knowledge and written notification of Plaintiff's Diversified Biotech Copyright, has refused to cease and desist and have continued to infringe said copyright.

6.8. All of Defendant's acts, as set forth in the preceding paragraphs, were without permission, license or consent of Plaintiff.

6.9. Plaintiff has no adequate remedy at law and has suffered and is continuing to suffer irreparable harm and damage as a result of the aforesaid acts of Defendant complained of herein.

WHEREFORE, Plaintiff prays:

A. That Defendant, its directors, officers, agents, servants, employees, related companies, parent companies, subsidiaries, licensees, assigns, and all parties in privity with Defendant be preliminarily and permanently enjoined from using Defendant's promotional literature which infringes Plaintiff's Diversified Biotech Copyright in any manner, including, but not limited to, manufacturing, printing, reprinting, publishing, vending, distributing, selling, displaying, promoting, or advertising any infringing promotional literature thereof, or any other copies of the copyrighted work, or by causing and/or participating in such manufacturing, printing, reprinting, publishing, vending, distributing, displaying, selling, promoting or advertising.

B. That Defendant, its directors, officers, agents, servants, employees, related companies, parent companies, subsidiaries, licensees, assigns, and all parties in privity with Defendant, be preliminarily and permanently

enjoined from intentionally interfering with the prospective relationships and contractual relationships between Plaintiff and its customers in any manner, including, but not limited to, selling or offering for sale to any of Plaintiff's customers any products that are competitive to Plaintiff's products and which contain infringing or confusingly similar trademarks to that of Plaintiff.

C. That Defendant file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction demanded above, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction.

D. That Defendant be required to deliver up to be impounded during the pendency of this action, all infringing copies of the Defendants' cryogenic labels in their possession or control.

E. That Defendant be required to recall and deliver up to be impounded during the pendency of this action, all infringing copies of the Defendants' cryogenic labels bearing the infringing designations.

F. That Defendant be preliminarily and permanently enjoined from assisting, aiding or abetting any other

person or business entity in engaging in or performing any of the activities enumerated in paragraphs A and B above.

G. That Defendant issue written notice to all of its customers, including those to whom it has sold or offered for sale the infringing cryogenic labels and any colorable imitations thereof, which states that said cryogenic labels are not endorsed, approved, manufactured or authorized by Plaintiff.

H. That monetary damages be awarded to Plaintiff in an amount to be fixed by the Court, including all of Defendant's profits or gains resulting from its willful infringement, or awarding Plaintiff its damages, whichever is greater, said amount to be trebled and exemplary damages to be awarded in view of Defendant's intentional acts of infringement.

I. Awarding to Plaintiff its attorneys' fees due to the exceptional nature of this case, and all of its costs and expenses of litigation.

J. For such other and further relief as this Court may deem just and proper.

**7. FOURTH COUNT**

**UNFAIR COMPETITION PURSUANT TO MASSACHUSETTS COMMON LAW; MISAPPROPRIATION; PASSING OFF; AND, UNPRIVILEGED**

**IMITATION**

7.1. DIVERSIFIED repeats and realleges all of the previous paragraphs of this Complaint as if fully set forth herein.

7.2. Defendant's aforesaid acts of unfair competition, have been and continue to be willful and deliberate and with the full knowledge of Plaintiff's prior use and ownership of Plaintiff's CRYO-TAG trademark, and with the intent of deceiving the public at Plaintiff's expense and the public's loss, and have caused confusion in the trade and in the minds of the purchasing public. Such acts constitute unfair competition and passing off under MGL 93A, and under the common laws of the Commonwealth of Massachusetts.

7.3. As a result of the aforementioned acts of Defendant, Plaintiff has been substantially damaged.

7.4. Plaintiff has no adequate remedy at law and has suffered and is continuing to suffer irreparable harm and damage as a result of the aforementioned acts of Defendant. Unless restrained by this Court, Defendant's acts will continue and will irreparably harm, damage and injure Plaintiff.

WHEREFORE, Plaintiff prays:

A. That Defendant, its directors, officers, agents, servants, employees, related companies, parent companies,

subsidiaries, licensees, assigns, and all parties in privity with Defendant, be preliminarily and permanently enjoined from using the designation CRYO-TAG or any other confusingly similar designation alone or in combination with other words or with graphic symbols or logos, to market, advertise or identify the Defendants' cryogenic labels.

B. That Defendant, its directors, officers, agents, servants, employees, related companies, parent companies, subsidiaries, licensees, assigns, and all parties in privity with Defendant, be preliminarily and permanently enjoined from intentionally interfering with the prospective relationships and contractual relationships between Plaintiff and its customers in any manner, including, but not limited to, selling or offering for sale to any of Plaintiff's customers any products that are competitive to Plaintiff's products and which contain infringing or confusingly similar trademarks to that of Plaintiff.

C. That Defendant file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction demanded above, a report, in writing, under oath, setting forth in detail the manner and form in which

it has complied with the injunction.

D. That Defendant be required to deliver up to be impounded during the pendency of this action, all infringing copies of the Defendants' cryogenic labels in their possession or control.

E. That Defendant be required to recall and deliver up to be impounded during the pendency of this action, all infringing copies of the Defendant's cryogenic labels bearing the infringing designations.

F. That Defendant be preliminarily and permanently enjoined from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities enumerated in paragraphs A and B above.

G. That Defendant issue written notice to all of their customers, including those to whom it has sold or offered for sale goods bearing the infringing cryogenic labels and any colorable imitations thereof, which states that said cryogenic labels are not endorsed, approved, manufactured or authorized by Plaintiff.

H. That monetary damages be awarded to Plaintiff in an amount to be fixed by the Court, including all of Defendant's profits or gains resulting from their willful infringement, or awarding Plaintiff its damages, whichever

is greater, said amount to be trebled and exemplary damages to be awarded in view of Defendant's intentional acts of infringement.

I. Awarding to Plaintiff its attorneys' fees due to the exceptional nature of this case, and all of its costs and expenses of litigation.

J. For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

**Mark P. White**

**Attorney for Plaintiff,**

**Diversified Biotech, Inc.**

**By:_Mark P. White (BBO 556,246)**
**Law Offices of White & Fudala**
**57 Bedford St., Suite 103**
**Lexington, MA 02420**
**(781) 863-2041**